UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DERRICK OAKS,

                                        Plaintiff,

                -vs-                                        13-CV-917-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.
_____

APPEARANCES:   MYERS, QUINN & SCHWARTZ, LLP (LEWIS L. SCHWARTZ, ESQ.,
               of Counsel), Buffalo, New York, for Plaintiff

               WILLIAM J. HOCHUL, JR., United States Attorney (FERGUS JOHN
               KAISER, Special Assistant United States Attorney, of Counsel),
               Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated October 2, 2014 (Item

11).

        Plaintiff Derrick Oaks initiated this action on September 11, 2013, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (see Items 7, 9).  For the following reasons, plaintiff's motion is denied, and

the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on May 15, 1970 (Tr. 111, 117).[1]  He filed applications for SSDI and SSI benefits with a protective filing date of February 9, 2010, alleging disability due to mental issues, diabetes, chemical imbalance, high blood pressure, high cholesterol, and sinus problems, with an onset date of July 30, 2010 (Tr. 12, 111-116, 117-120).   The applications were denied administratively on  February 17, 2011 (Tr. 12, 55, 56).  Plaintiff requested a hearing, which was held on May 23, 2012, before Administrative Law Judge ("ALJ") Timothy M. McGuan (Tr. 27-54).  Plaintiff appeared and testified at the hearing, and was represented by non-attorney representative Brian P. Kujawa.  Vocational expert ("VE") Jay Steinbrenner also appeared and testified.

On June 5, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 9-22).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's mental impairment (schizophrenia, paranoid type), while "severe," did not meet or medically equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), § 12.03 (*Schizophrenic, Paranoid and Other Psychotic Disorders*) (Tr. 39-40).   The ALJ discussed the evidence in the record regarding the severity of plaintiff's mental impairment, including reports from treating and consultative medical sources and plaintiff's hearing testimony and statements regarding the limiting effect of his paranoia, hallucinations, and other symptoms, and determined that plaintiff

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

had the residual functional capacity ("RFC") to perform work at all exertional levels, with certain non-exertional limitations in the areas of interaction with the public and the ability to understand, remember, and carry out complex and detailed tasks (Tr. 17-22).  Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical and mental demands of plaintiff's past relevant work as a hospital cleaner, warehouse worker and kitchen helper (*see* Tr. 49-50), the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 22).

The ALJ's decision became the final decision of the Commissioner on August 12, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-6), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to properly assess the opinion evidence from "acceptable medical sources;" (2) failed to properly assess the opinion evidence from "other sources;" (3) failed to further develop the medical record regarding plaintiff's cognitive functioning; (4) failed to consider the effect of plaintiff's obesity on his mental ability to perform work-related activities; and (5) failed to properly assess plaintiff's credibility.  *See* Items 7-1, 10).  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 9-1.

## DISCUSSION

I.      **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000);

*Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).   "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of

impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education,

and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.    The ALJ's Disability Determination

In this case, ALJ McGuan determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since July 30, 2010, the alleged onset date (Tr. 14). At step two, the ALJ determined that plaintiff's mental impairment is "severe" as that term is defined in the regulations because it "causes more than minimal functional limitations and interferes with [plaintiff]'s ability to perform some basic work-related activities" (*id.*).

At step three, the ALJ discussed the medical evidence of record regarding plaintiff's physical and mental impairments, with particular focus on the criteria of Listing 12.03. To satisfy this criteria, the claimant must show (among other things) that his or her mental impairment results in at least two of the following:

1.    Marked restriction of activities of daily living; or

2.    Marked difficulties in maintaining social functioning; or

3.      Marked difficulties in maintaining concentration, persistence or pace; or

4.      Repeated episodes of decompensation, each of extended duration ….

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B)(Paragraph "B" criteria).  A claimant can also satisfy the criteria of Listing 12.03 by presenting a medically documented history of chronic schizophrenic, paranoid, or other psychotic disorder of at least two years' duration, and one of the following:

1.      Repeated episodes of decompensation, each of extended duration;

2.      A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate;

3.      Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03(C) (Paragraph "C" criteria).

ALJ McGuan determined that the severity of plaintiff's mental impairment did not meet or equal the criteria of Paragraphs B or C, based on the hearing testimony and the report of a consultative psychiatric evaluation performed by Dr. Susan Santarpia, a psychologist, on December 7, 2010 (Tr. 284-87).  According to the ALJ, this evidence shows that plaintiff has experienced mild restriction of the activities of daily living; moderate restriction in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; no episodes of decompensation which have been of extended duration; and no evidence to satisfy the remaining Paragraph C criteria  (Tr. 15-16).

The ALJ then found that plaintiff had the RFC for a full range of work at all exertional levels, subject to the following nonexertional limitations: occasional interaction with the public; no problems with co-workers or supervisors; and, occasional ability to understand, remember, and carry out complex and detailed tasks (Tr. 17).  In making this finding, the ALJ discussed the medical evidence in the record, along with plaintiff's hearing testimony regarding his past work experience, activities of daily living, and the functional limitation caused by the symptoms of his mental impairment (Tr. 17-22).  With regard to the opinion evidence, the ALJ noted Dr. Santarpia's report indicating mild restrictions in the areas of maintaining attention, concentration, memory, making appropriate decisions, relating adequately with others, and appropriately dealing with stress (Tr. 18).  The ALJ also discussed a Psychiatric Review Technique ("PRT") form dated February 16, 2011, completed by state agency review physician H. Tzetzo, indicating moderate restrictions in the areas of maintaining social functioning and maintaining concentration, persistence or pace (Tr. 300).  In Dr. Tzetzo's opinion, the evidence of record demonstrates that plaintiff "should be able to understand and follow work directions in a work setting (with low public contact), maintain attention for such work tasks, relate adequately to a work supervisor for such work tasks, and use judgement to make work related decisions in a work setting (with low public contact)" (Tr. 302).  The ALJ also considered but discounted the opinions of licensed social worker Elaine Liu, plaintiff's mental health counselor at Horizon Health Services, and Adrienne M. Roy, plaintiff's treating nurse practitioner at Horizon, which reported plaintiff's mental functional limitations at levels inconsistent with the ALJ's RFC assessment (Tr. 21; see Tr. 355-57, 381-91).  Comparing plaintiff's RFC with the physical and mental demands of plaintiff's previous jobs, as identified by the VE, the ALJ

determined that plaintiff was able to return to his past relevant work as a hospital cleaner, warehouse worker, and kitchen helper, concluding the sequential evaluation at step four (Tr. 22).

## IV.    Plaintiff's Motion

### A.    Evaluation of Medical Source Opinions

Plaintiff contends that the ALJ erred in failing to properly evaluate the opinions of the consultative examining psychologist, Dr. Santarpia; the state agency review psychologist, Dr. Tzetzo; and consultative physician Dr. Donna Miller, who performed a physical examination of plaintiff on December 7, 2010.  In this regard, the Social Security regulations provide that in determining eligibility for SSDI or SSI benefits, the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, "[r]egardless of its source," including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the … physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir. 2004) (citing 20 C.F.R. § 416.927(c);[2] *see also* 20 C.F.R. § 404.1527(c)).  The ALJ "does not have to explicitly walk through these factors," so long as the court can conclude that the ALJ "applied the substance" of the listed factors and provided "good reasons" for the weight given to the medical source's

---

[2]20 C.F.R. § 416.927 was amended effective March 26, 2012, with the result that subsection (d) was re-designated as subsection (c), without substantive change.  With regard to this case, the ALJ's decision was issued before the effective date of the amendment, and the Appeals Council's ruling was issued after the effective date.  For continuity, the court will herein refer to 20 C.F.R. § 416.927(c), presently in effect.

opinion." *Hall v. Colvin*, ___F. Supp. 2d___, ___, 2014 WL 3955256, at *10 (W.D.N.Y. Aug. 11, 2014) (quoting *Halloran*, 362 F.3d at 32).

The regulations further provide that, since state agency medical and psychological consultants "are highly qualified … medical specialists who are also experts in Social Security disability evaluation …," 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i), ALJs must evaluate the findings and opinions of these consultants using the relevant factors described above, including the consultant's medical specialty and expertise in applying the Social Security rules; the supporting evidence in the case record, supporting explanations the consultant provides; and any other factors relevant to the weighing of the opinions. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." *Id.*; *see also* Social Security Ruling ("SSR") 96-6P, 1996 WL 374180 (S.S.A. July 2, 1996).

In this case, Dr. Santarpia's consultative psychiatric examination report reflects her opinion that, despite plaintiff's psychiatric problems interfering to some degree with his ability to function on a daily basis, he was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently, all within normal limits (Tr. 286). Considering the consistency of these conclusions with the ALJ's assessment of plaintiff's RFC and nonexertional limitations (see Tr. 17), it is clear to the

court that the ALJ relied on Dr. Santarpia's opinion as substantial evidence in support of his RFC determination which, in the absence of any medical opinion from a treating source as to the nature, severity, or functionally limiting effects of plaintiff's mental impairments, he was entitled to do.  *See Finney ex rel. B.R. v. Colvin*, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (report and recommendation) ("A consultative physician's opinion may constitute substantial evidence in support of the ALJ's determination.") (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995)).

The ALJ's written determination also adequately reflects the weight given to the opinions expressed in the PRT form and mental residual functional capacity assessment completed by the state agency consultative review physician, Dr. Tzetzo.  As discussed above, in Dr. Tzetzo's opinion the medical evidence demonstrated that, in a work setting with low public contact, plaintiff would be able to understand and follow directions, maintain attention for work tasks, relate adequately to a supervisor, and use his judgment to make work-related decisions (*see* Tr. 302).  These findings are entirely consistent with the ALJ's assessment of plaintiff's functional capacity for work in an environment with limited public interaction, minimal opportunity for problems with supervisors and co-workers, and only occasional assignment of complex tasks.

Plaintiff also contends that the ALJ erred by adopting the opinion of Dr. Miller that her consultative physical examination of plaintiff on December 7, 2010 revealed "no significant physical limitations" (Tr. 283), without discussion of her clinical findings indicating that plaintiff has a reduced range of lumbar spine motion.  However, plaintiff has neither provided nor cited to any evidence of record to substantiate his view that Dr. Miller's range of motion findings demonstrate functional limitations inconsistent with the ALJ's RFC

assessment.  In the absence of such evidence, and considering the admission by plaintiff's representative at the May 23, 2012 hearing that plaintiff's physical impairments were under control and not at issue (*see* Tr. 34-35), the court finds no error in the ALJ's adoption of Dr. Miller's opinion as to plaintiff's physical limitations.

Based upon this review, the court finds that ALJ McGuan's written determination reflects that he "applied the substance" of the relevant factors for considering the medical source statements of consultative examining and reviewing physicians, *Hall*, 2014 WL 3955256, at *10, and gave sufficient reasons for the weight ascribed to those statements in a manner that allows the court to "pick up the rationale of [the] ALJ's decision …." *Finney*, 2014 WL 3866452, at *7.  Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to properly evaluate the medical source opinions of record.

### B.     Evaluation of "Other Source" Evidence

Plaintiff also contends that the ALJ improperly evaluated the opinions of the nurse practitioner and social worker who treated him at Horizon Health Services.  SSR 06-03p provides in this regard that, in evaluating "all relevant evidence in a case record," the ALJ must consider not only opinion evidence from "acceptable medical sources," but also evidence provided by "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners … [and] licensed clinical social workers …." SSR 06-03p,  2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).  The ruling directs the ALJ to use essentially the same factors in evaluating the opinions of these "other sources" as are used to evaluate

the opinions of "acceptable medical sources" set forth in 20 C.F.R. §§ 404.1527(d) and

416.927(d).  As explained in the ruling:

> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case.  Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06-03p, 2006 WL 2329939, at *5.  Further:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6.  Under this guidance, "[w]hile the Commissioner is thus free to decide that the

opinions of 'other sources' … are entitled to no weight or little weight, those decisions

should be explained." *Sears v. Astrue*, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012);  *see*

*also Colon v. Astrue*, 2013 WL 2245457, at *10 (W.D.N.Y. May 21, 2013) (finding abuse

of discretion for ALJ to "entirely ignore" other source evidence).

    In this case, as discussed above, ALJ McGuan considered the opinions of the

licensed social worker and nurse practitioner, but found that the mental residual functional

limitations outlined in those opinions "do not correctly reflect [plaintiff]'s overall condition

during most of the period at issue …," citing the treating notes from Horizon Health

Services indicating plaintiff's "good mood, good sleep, ability to socialize, et." (Tr. 21; *see,*

*e.g.,* Tr. 331, 336, 339, 342, 345).  The ALJ also referred to the medical evidence reflecting

that plaintiff had no episodes of extended periods of decompensation; no hospital

admissions or emergency room treatment for psychiatric reasons; stabilization of psychotic symptoms and demonstrated ability to function in a work setting with medication and treatment; and a global assessment function ("GAF") rating of 55 (moderate symptoms)[3] generally throughout the period (*see* Tr. 21-22).

Based on this review, the court finds that the ALJ's discussion of the evidence in the record substantially complies with the directives of the Social Security regulations and rulings in a manner that allows subsequent reviewers to follow his reasoning, and that there is substantial evidence to support the ALJ's assessment of plaintiff's physical and mental residual functional capacity.

### C.    Development of the Record

Plaintiff next contends that the ALJ failed to further develop the medical record with respect to plaintiff's cognitive functioning.  In this regard, the Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel …."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).  This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled …," as well as "advising the plaintiff of the importance of

---

[3]GAF is a rating of overall psychological functioning on a scale of 0 to 100.  A rating of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision, 2000).

such evidence." *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004).  On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

According to plaintiff, there is an obvious gap in the record with respect to evidence of plaintiff's cognitive functioning, as reflected in Dr. Santarpia's estimation that plaintiff's intellectual functioning was in the "borderline to deficient range" (Tr. 286), and her recommendation that plaintiff be referred for cognitive assessment (Tr. 287).  However, the ALJ's failure to recognize this gap cannot be deemed reversible error, given that plaintiff did not specifically allege impairment of cognitive functioning as a disabling condition in his application for benefits (*see* Tr. 163), at his hearing (*see* Tr. 34-35),[4] or in his brief to the Appeals Council (*see* Tr. 213-16), and neither Dr. Santarpia nor any other medical source found plaintiff's cognitive functioning to be a significant factor relative to his ability to perform basic work activities.  Moreover, as already discussed, Dr. Santarpia's overall psychiatric evaluation was consistent with the ALJ's assessment of plaintiff's RFC and accompanying nonexertional limitations, and there is substantial evidence in the record to support the ALJ's determination that plaintiff's mental impairments did not limit his ability to perform his past relevant work to the extent required under the Social Security Act, regulations and rulings.

---

[4]Indeed, as alluded to above, plaintiff's representative conceded at the May 23, 2012 hearing that the ALJ's focus should be narrowed to schizophrenia as the only disabling condition supported by the record (Tr. 34-35).

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to discharge his affirmative duty to further develop the record regarding plaintiff's cognitive impairment.

### D.     Obesity

Plaintiff also contends that the ALJ erred by failing to consider the effect of plaintiff's obesity on his mental ability to perform work-related activities.   As with cognitive functioning, plaintiff did not allege obesity as a disabling condition in his application for benefits, at his hearing, or in his brief to the Appeals Council.  "Nevertheless, an ALJ may have a duty to consider the impact of a claimant's obesity even where he or she does not identify it as a limiting condition." *Thompson v. Astrue*, 2013 WL 265239, at *3 (W.D.N.Y. Jan. 23, 2013).

SSR 02–1p explains that the Social Security regulations "consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability.  The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02–1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002).  Thus, where the record contains evidence indicating limitation of function due to obesity, the ALJ must consider the effect of obesity on the claimant's ability to do basic work activities at steps two through four of the sequential evaluation process. *See Sotack v. Astrue*, 2009 WL 3734869, at *4-5 (W.D.N.Y. Nov. 4, 2009) (where record contains evidence of obesity and limiting effects, ALJ is required to consider its impact even if claimant did not allege obesity as an impairment).  "Conversely, the ALJ's obligation to

discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." *Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011) (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 276 (N.D.N.Y. 2009) (no error where ALJ fails to specifically discuss obesity at steps two and three, when the record provides no evidence the claimant is limited in basic work activities due to obesity; citing cases); *see also Pokluda v. Colvin*, 2014 WL 1679801, at *8-9 (N.D.N.Y. Apr. 28, 2014) (ALJ not required to consider impact of obesity where claimant did not allege obesity as an impairment, and no medical source diagnosed obesity as a distinct medical condition or found obesity to be a significant factor relative to claimant's ability to perform basic work activities); *Thompson*, 2013 WL 265239, at *3 (notwithstanding clear evidence of claimant's obesity, ALJ has no duty to consider obesity as an impairment or a contributing factor where record is "devoid of any suggestion that her weight negatively impacted her ability to work.").

The court's review of the record in this case reveals no medical source evidence or hearing testimony to lend support to plaintiff's belated contention that the ALJ failed to properly evaluate the effect of plaintiff's obesity on his ability to perform work-related activities.   In his written determination, the ALJ made specific reference to treatment records from Cleve-Hill Family Health indicating that plaintiff's weight had decreased from 246 pounds in March 2010 (reported on 12/9/2009; *see* Tr. 264)  to 219 pounds by the time of the consultative physical examination by Dr. Miller in December 2010 (*see* Tr. 15, 283).

As discussed, Dr. Miller reported that the consultative examination of plaintiff revealed no significant functional limitations, and there is nothing in the report to indicate that plaintiff complained of any physical limitations as a result of his obesity (*see* Tr. 280-83).  Indeed, the court's review of the record as a whole reveals no medical source evidence to support a finding that plaintiff's obesity negatively impacted his ability to perform basic work activities.

Based on this review, the court finds that the ALJ's sequential evaluation in this case satisfied the requirements of SSR 02-01p regarding proper consideration of evidence of obesity, and that plaintiff is not entitled to reversal or remand on this ground.

### E.    Credibility

Finally, plaintiff contends that the ALJ failed to properly assess plaintiff's credibility. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")).  The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms.  20 C.F.R. § 416.929(c)(3)(i)–(vii); *see also Meadors v. Astrue*, 370 F.App'x 179, 184 n.1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ found that plaintiff's impairments could reasonably be expected to cause the limitations testified to, but that his statements concerning the intensity, persistence and effect of those limitations were not credible to the extent they were

inconsistent with the ALJ's RFC assessment (*see* Tr. 20-21). In making this determination, the ALJ considered plaintiff's testimony and statements regarding his impairments, including paranoia around groups of people, fear of break-ins, hearing voices, and social isolation, but found these statements inconsistent with the record. The ALJ specifically noted the lack of evidence of extended periods of decompensation, hospital admissions or emergency room treatment for psychiatric reasons, or significant episodes of paranoia or auditory hallucinations (Tr. 21). The ALJ also discussed plaintiff's daily activities, which included watching television and playing video games, cleaning, cooking simple foods, and socializing with friends (Tr. 17-19, 21), and noted that plaintiff was doing well on Haldol with no side effects (Tr. 18, 22). In addition, the ALJ referred to Horizon treatment records revealing that plaintiff reported having two different girlfriends during 2011 and 2012 (Tr. 19, 21, 342, 345, 384), contrary to plaintiff's testimony at the May 23, 2012 hearing that he had not had a girlfriend within the last three years (Tr. 38).

As this discussion demonstrates, the ALJ's finding that plaintiff's statements regarding his functional limitations and restrictions as a result of his mental impairment were not credible is sufficiently grounded in the evidence and articulated in the ALJ's determination to make clear to plaintiff, to this court, and to subsequent reviewers the weight given to plaintiff's statements about his functional limitations, and the reasons for that weight. As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority.

Accordingly, plaintiff is not entitled to reversal or remand on this ground.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld. Accordingly, plaintiff's motion for judgment on the pleadings (Item 7) is denied, the Commissioner's motion for judgment on the pleadings (Item 9) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN

United States District Judge

Dated:   November 5, 2014

p:\pending\2013\13-917.ssa.oct21.2014